611 So.2d 781 (1992)
STATE of Louisiana
v.
Carl S. CARRIERE.
No. 92-KA-0066.
Court of Appeal of Louisiana, Fourth Circuit.
December 15, 1992.
Harry F. Connick, Dist. Atty., Elizabeth Revere, Asst. Dist. Atty., New Orleans, for plaintiff-appellee State of La.
Sherry Watters, Orleans Indigent Defender Program, New Orleans, for defendant-appellant Carl Carriere.
Before SCHOTT, C.J., and KLEES and WALTZER, JJ.
KLEES, Judge.
On April 19, 1990, the appellant was charged with possession of stolen property valued at least $500.00. He was arraigned on April 25, 1990, and pled not guilty. However, on August 22, 1990, he withdrew his not guilty plea and pled guilty as charged and was sentenced to ten years at hard labor. On August 29th, the defendant withdrew his guilty plea, and the case was set for trial. On January 31, 1991, the appellant again withdrew his not guilty plea and pled guilty as charged. He again waived all delays and was sentenced to serve six years at hard labor. At that time, the State noted its intent to file a multiple bill against him, and it did so on March 4th.
On March 8, 1991, the defendant again withdrew his guilty plea, and the trial court recused itself. After the case was re-allotted, the appellant filed a pro se "Motion to Review", which was denied on June 6th, the day of trial. At the end of trial, a six-member jury found him guilty as charged. The multiple bill was heard on August 12th recessed until October 14th, when the court found him to be a second offender. He was sentenced on that date to serve ten years at hard labor. His motion for appeal was filed and granted on that date, and his record was lodged in this court on January 9, 1992. The appellant's pro se brief was filed on August 12, 1992.

FACTS:
At approximately 9:00 p.m. on March 25, 1990, two officers on routine patrol in the Fifth District observed a 1980 Cutlass run a stop sign at the corner of N. Derbigny and Lamanche Streets. The officers, who were in a marked police unit, attempted to *782 stop the Cutlass, but the car sped around the corner. The officers ran the car's license plate number through the police computer and discovered it was stolen. The car eventually stopped in the middle of the street, and its occupants got out of the car and ran. While one officer chased the passenger, the other chased the driver, who was later identified as the defendant Carl Carriere. Both men were caught after a brief chase and were walked back to the police car.
One of the officers looked inside the stolen car and observed that the steering column was defeated, there were wires hanging down from under the dashboard, and there were no keys in the ignition. No keys were found on the defendant. The owner of the car was then contacted, and he came to the scene. He identified the car as his and told the officers that he had not given either of the men permission to take the car.
Charles Robinson, the owner of the car, testified that he did not know either the defendant or the other man the officers saw exit the car. He testified that he had paid $9000.00 for the car in 1985, and he had recently had repairs totalling $915.00 performed on the car.
His son, Melvin Robinson, testified that he had driven the car earlier that day to an apartment complex in New Orleans East where he and his friend had gone fishing. While they were fishing, the defendant came up to them and talked with them for a while. When Melvin later went to his car to store his fishing equipment, he noticed the defendant standing a few cars away from his car. Melvin testified he went inside his friend's apartment, and when he left some time later, the car was gone. He testified he did not give the defendant or anyone else permission to use the car.

Errors Patent
A review of the record for errors patent reveals there are none.

Assignment of Error by Counsel

I.
By defense counsel's sole assignment of error, it is alleged that the trial court erred by denying the appellant's pro se "Motion for Review" in which he sought to enforce a previously-made plea bargain agreement. Counsel argues that according to the appellant's motion, he pled guilty in January, 1991, based upon the promise that he would receive a six-year sentence and that a multiple bill would not be filed against him.
At the original guilty plea hearing, there was no mention of any agreement not to multiple bill the appellant. In fact, at the subsequent multiple bill hearing, where the first plea was withdrawn, the court and the prosecutor discussed a previous agreement whereby the appellant would be multiple billed only in this case and not in any of the other cases pending against him. His counsel stated that the appellant told him that he did not remember being boykinized when he gave his plea, and the court stated that the appellant could withdraw his plea. Counsel noted that the appellant admitted to being the person convicted in the prior conviction, but then when the appellant was being questioned about this, he hesitated, and counsel then requested that a full hearing be held on the multiple bill. At that point, the court withdrew the guilty plea and set the case for trial.
The transcript of the second guilty plea, the one which counsel contends was given in response to a promise not to multiple bill, does not contain any indication of any agreement to that effect. The transcript only indicates that the ad hoc judge boykinized the appellant and then sentenced him to serve six years. Although the transcript does not indicate, the minute entry of that date also notes that the State "made an oral motion for a multiple bill on the above defendant and the court set the matter for arraignment on same for 2/7/91." At the subsequent multiple bill hearing, defense counsel, a different one than was present for the first plea of guilty and withdrawal, indicated he wanted a little more time, and the court stated that he was "ready to let this man just withdraw his plea of guilty and let him go to another Court that maybe will give him better justice than here; because I'm not listening to this again." Defense counsel stated the appellant was *783 ready to proceed, but then he asked the appellant if he wanted to accept the offer to withdraw the plea. Counsel conferred with the appellant, and the court again advised the appellant to withdraw his plea because he was not "giving him the same sentence anymore." Defense counsel stated that he wanted to withdraw from the case, and the trial court granted this request. The following then occurred:
BY THE DEFENDANT:
Judge
BY THE COURT:
Yes, sir, what do you have to say?
BY THE DEFENDANT:
I was only trying to get an understanding of what was going on.
BY THE COURT:
No, no, no. I have seen you before doing this same thing again. And, I am not going to let you turn this Court into what you want to turn it into. It is not going to work that way.
Now, I am not giving you that sentence that you pled guilty to.
You want something else? Because, you and I don't understand each other, and you also don't understand your attorney. So, I suggest that maybe you ought to withdraw your plea of guilty, because I am going to give you a heavier sentence.
BY THE DEFENDANT:
I'd like to keep the same plea bargain that I had. I was only trying to understand what was going on.
BY THE COURT:
I am recusing myself in this case, period.
Remand the defendant.
I recuse myself. Remand the defendant. Call the next case.
At the hearing on the motion to review, the appellant had different counsel yet again. The court noted that it, the prosecutor, and the current defense counsel had listened to the tapes of the January 31st guilty plea and of the March 31st hearing where this plea was withdrawn. The court found that there was no indication that the appellant had been promised that a multiple bill would not be filed against him. The defense counsel agreed that this was also his interpretation of the tapes. The appellant then stated that he thought he was to receive only six years, and he could not understand how that sentence could be taken away from him. The court reserved the appellant's right of appeal on this issue.
Appellant's counsel now argues that the plea bargain given in connection with the second guilty plea, that no multiple bill would be filed against the defendant, should have been enforced, rather than withdrawing this plea. In State v. Hayes, 423 So.2d 1111, 1112 (La.1982), the Court stated: "A guilty plea has been found to be constitutionally infirm when the state does not fulfill an express or implied part of the plea bargain agreement which precipitated the defendant's decision to so plead." The Court further stated: "It is well settled that when a guilty plea is induced by a plea bargain or by what a defendant justifiably believes is a plea bargain, and that bargain is not kept, defendant is denied due process of law because the guilty plea was not freely and knowingly given." Id. at 1114.
Hayes and most of the cases cited therein dealt with situations where the State specifically promised to take some actions with respect to the defendant's case (i.e., recommending probation, State v. Neitte, 363 So.2d 425 (La.1978)), or not to take some action (i.e., not to file a multiple bill, Hayes). However, in State ex rel. LaFleur v. Donnelly, 416 So.2d 82 (La. 1982), the Court vacated the defendant's guilty pleas and sentences due not to the failure of the State to live up to a plea bargain, but rather due to the fact that by operation of law the defendant's sentence was more severe than what he had been led to believe it would be. The defendant pled guilty to various crimes with the understanding that he would receive concurrent sentences. However, he was never informed that one of the sentences would have to be served without benefit of parole eligibility. The Court found that the defendant's plea had been made voluntarily, but not knowingly and intelligently, and it vacated the defendant's pleas and sentences and remanded the case. The Court noted that "it is probably much more important *784 to the defendant's decision that he understand the maximum penalty exposure." If the State is a party to a plea bargain agreement, the bargain has to be enforced. Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); State v. Redfearn, 441 So.2d 200 (La.1983). If a plea bargain exists to which the State is not a party but upon which a defendant relied in pleading guilty, he must be allowed to withdraw his plea if he so moves. LaFleur, 416 So.2d 82.
Here, a reading of the transcripts of the second guilty plea and the withdrawal of this plea, and of the minute entry of the plea do not support the appellant's contention that the State agreed not to multiple bill the appellant. Indeed, just after the plea was taken, the State noted its intent to file a multiple bill. Even though the appellant may have believed that he was pleading guilty with the understanding that a multiple bill would not be filed, there is nothing to show that the State agreed not to file a multiple bill. Thus, the trial court did not err in denying the appellant's request that the agreement, as he understood it, be enforced. Indeed, because it appears the State was not a party to the agreement, the only relief to which the appellant was entitled was the withdrawal of his guilty plea. This assignment has no merit.

Pro Se Assignments of Error

I., II., & III.
All three of the appellant's pro se assignments of error concern what he perceives as the trial court's illegal withdrawal of his plea and sentence. By his first assignment, the appellant contends the trial court illegally ordered his second guilty plea withdrawn over his objection in order to impose a greater sentence. He argues that he, the State, and the ad hoc judge who took the plea all agreed that in exchange for his guilty plea he would receive a sentence of no more than six years. He contends that Judge Marullo was dissatisfied with this sentence and withdrew the plea over the appellant's objections in order to allow the State to multiple bill him.
As noted above, it appears the State did not agree not to multiple bill the appellant. Because the State was not a party to any such agreement, Judge Marullo could not enforce any such promise made to the appellant. Although the appellant did not agree to the withdrawal of his guilty plea, enforcement of the agreement was not possible. Thus, the only relief to which he was entitled was the withdrawal of his plea, which the court ordered. There is nothing in the record to support the appellant's contention that the plea was withdrawn because Judge Marullo wanted to impose a stiffer sentence. This assignment has no merit.
By his second assignment, the appellant argues that the trial court was without jurisdiction to withdraw the plea and sentence because he already begun serving his sentence. In support, he cites C.Cr.P. art. 881, which provides that a trial court may not amend a legal sentence imposed at hard labor once a defendant has begun serving it. However, the action of the trial court in this case was not an amendment of the sentence, but rather was a withdrawal of a guilty plea and its sentence due to a breach of what the appellant believed was a plea bargain. Art. 881 has no application to this case, and this assignment has no merit.
By his last assignment, the appellant contends he was placed in double jeopardy by the trial court's actions because he already had a legal sentence, which was vacated to allow the trial court to impose a greater sentence. As noted above, there is no indication that the withdrawal of the guilty plea and its attendant sentence was based upon any desire by the judge to give the appellant a greater sentence, but rather it was in response to the breach of what the appellant believed was a plea bargain. The trial court's action did not place the appellant in double jeopardy, but rather it granted the appellant the only relief to which he was entitled. This assignment has no merit.
For the foregoing reasons, the appellant's conviction and sentence are hereby affirmed.